# BEFORE THE UNITED STATES JUDICIAL PANEL
# ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: AT&T INC. CELLULAR CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 3124 |

## PLAINTIFFS RICHARD OLIVIERI AND LAUREN WOON'S RESPONSE IN OPPOSITION TO PLAINTIFF YOUNG'S MOTION FOR TRANSFER OF ACTIONS TO THE NORTHERN DISTRICT OF GEORGIA PURSUANT TO 28 U.S.C. § 1407 FOR CONSOLIDATED OR COORDINATED PRETRIAL PROCEEDINGS

Plaintiffs Richard Olivieri and Lauren Woon ("Olivieri Plaintiffs") move to exclude their action from the motion filed by Plaintiff-Movant Lori Young ("Movant") seeking to transfer four cases naming AT&T Inc. and/or AT&T Mobility, LLC as defendants and any tag-alongs to the Northern District of Georgia for consolidated or coordinated pre-trial proceedings (the "Young Motion"). Exclusion is warranted because on August 9, 2024, Olivieri Plaintiffs filed a First Amended Class Action Complaint ("FAC") that dismissed all claims against defendants AT&T, Inc. and AT&T Mobility, LLC leaving only Snowflake, Inc. ("Snowflake") as the single defendant. *Oliveri, et al. v. Snowflake, Inc.* ("*Oliveri*"), No. 2:24-cv-00056 (D. Montana) should therefore be excluded from the Young Motion and transfer should be denied.

## I. BACKGROUND

### A. The Snowflake Data Theft Attack

In June 2024, Snowflake announced a data security incident that affected as many as 165 of its corporate clients (the "Snowflake Data Breach").[1] Snowflake is a leading cloud-based data storage and analytics provider.[2] It provides digital warehouses, known as "Snowflake Data Clouds" for thousands of clients around the world.[3] Snowflake's clients include, but are not limited to AT&T, Ticketmaster, Mastercard, Nielsen, Novartis, PepsiCo, Siemens, Advance Auto Parts, Santander Bank, Allstate Insurance, Anheuser-Busch, Mitsubishi, Neiman Marcus, Doordash, HP, Instacart, Capital One, JetBlue, Pitney Bowes, Progressive, State Farm, NBC Universal, and over 8,000 others.[4] Snowflake provides services to its corporate clients "under an agreement [] and

---

[1] https://snowflake.discourse.group/t/detecting-and-preventing-unauthorized-user-access/8967/1 (last visited August 16, 2024).
[2] https://www.snowflake.com/en/why-snowflake/partners/cloud-partners/ (last visited August 16, 2024).
[3] https://www.snowflake.com/trending/what-data-cloud/ (last visited August 16, 2024).
[4] https://www.snowflake.com/en/customers/all-customers/ (last visited August 16, 2024).

solely for their benefit."[5] According to Snowflake, its corporate customers are responsible for the collection and use of their own customer data.[6]

In or around mid-April 2024, an unauthorized party gained access to at least 165 of Snowflake's corporate accounts, hosted on Snowflake's data cloud. The hackers stole customer and employee data from among others Anheuser-Busch, Allstate, Los Angeles Unified, Mitsubishi, AT&T, Progressive, Pure Storage, State Farm, Ticketmaster, Santander Bank, QuoteWizard, Advance Auto Parts, and Neiman Marcus.[7] Mandiant, a Google-owned cybersecurity firm that assisted Snowflake in its incident response efforts, tracked the unidentified threat actor under the name UNC5537, describing it as financially motivated.[8] Mandiant explained, since April 2024 "UNC5537 [] [was] systematically compromising Snowflake customer instances using stolen customer credentials, advertising victim data for sale on cybercrime forums, and attempting to extort many of the victims."[9] Mandiant's investigation revealed that the threat campaign was successful because "the impacted accounts were not configured with multi-factor authentication [MFA] enabled, meaning successful authentication only required a valid username and password."[10]

Snowflake blames the data thefts on its corporate clients who did not require MFA to secure customer and employee data hosted on their Snowflake accounts.[11] At the same time, as a matter

---

[5]     https://www.snowflake.com/privacy-policy/ (last visited August 16, 2024).
[6]     *Ibid*.
[7]     https://www.bleepingcomputer.com/news/security/advance-auto-parts-stolen-data-for-sale-after-snowflake-attack/; https://www.wired.com/story/snowflake-breach-advanced-auto-parts-lendingtree/; https://www.securityweek.com/millions-impacted-by-breach-at-advance-auto-parts-linked-to-snowflake-incident/ (last visited August 16, 2024).
[8]     https://cloud.google.com/blog/topics/threat-intelligence/unc5537-snowflake-data-theft-extortion (last visited August 16, 2024).
[9]     *Ibid*.
[10]    *Ibid*.
[11]    *Ibid*.

of practice, Snowflake did not enable, enforce or require its corporate clients to use MFA. Shortly after its own security incident Snowflake implemented significant changes to its MFA practices, that should have been in place all along, including giving corporate client administrators the option to make MFA mandatory, adding more security customization options, and introducing a new platform for monitoring, and enforcing MFA policies.[12]

B.  **Snowflake Customer's Varying Data Breaches**

1.  **Ticketmaster/Live Nation Data Breach**

On July 8, 2024, Ticketmaster, a wholly owned subsidiary of Live Nation Entertainment, Inc., began notifying over 500 million former and current customers of a data security incident.[13] Ticketmaster is a ticket distribution company that buys, sells, and transfers tickets for large-scale sports and entertainment, focusing on sales, marketing, and distribution.[14]

Scant details of the breach were provided, only that an unauthorized third party obtained customer data from a cloud database hosted by Ticketmaster's third-party service provider, Snowflake.[15] The unauthorized activity occurred between April 2, 2024, and May 18, 2024 and breached data included full names, addresses, email addresses, phone numbers, ticket sales and

---

[12] https://www.techradar.com/pro/security/snowflake-is-bringing-in-some-big-mfa-changes-following-recent-security-incidents (last visited August 16, 2024).
[13] https://www.siliconvalley.com/2024/07/25/ticketmaster-warns-of-breach-affecting-customers-personal-info-and-credit-cards/; https://www.nytimes.com/2024/05/31/business/ticketmaster-hack-data-breach.html; https://www.bitdefender.com/blog/hotforsecurity/ticketmaster-starts-notifying-data-breach-victims-customers-in-the-us-canada-and-mexico-are-affected/?srsltid=AfmBOoo3nvCpA37KHA3oV7Ez9o2ZD-vwJ_aZLn5YoK87rYy2pYUpMBQ6%2F (last visited August 19, 2024).
[14] https://www.bloomberg.com/profile/company/0009574D:US; https://www.livenation.com/ticketmaster/ (last visited August 16, 2024).
[15] https://thehackernews.com/2024/06/lessons-from-ticketmaster-snowflake.html (last visited August 16, 2024).

3

event details, order information, the last four digits of card numbers, expiration dates, and customer fraud details (the "Ticketmaster Data Breach").[16]

On May 28, 2024, the hacking group, ShinyHunters, posted that 1.3 terabytes of Ticketmaster's customer data was available for purchase on the dark web for $500,000.[17] ShinyHunters has continued to attempt to extort Ticketmaster and sell data stolen from fans and musicians, offering to sell ticket information for Taylor Swift concerts and leaking tens of thousands of "print-at-home" tickets for upcoming concerts.[18]

The principal executive offices of Ticketmaster and Live Nation are in Beverly Hills, California.[19] The first action filed against Ticketmaster relating to this breach, *Ryan, et al. v. Ticketmaster, et al.* 2:24-cv-04482-SPG-JC, was filed in the Central District of California, where Ticketmaster and Live Nation are headquartered.[20] Since this filing, approximately twenty more cases have been filed, <u>only two of which name Snowflake as a defendant</u>. *See Rason v. Snowflake Inc. and Ticketmaster LLC* (CV-24-76-BU-BMM, D. Mont.) and *Yarbough, et al. v. Snowflake, Inc., Live Nation Entertainment, Inc. and Ticketmaster, LLC* (2:24-cv-06604, C.D. Cal.). To date, multiple plaintiffs in the Central District of California have moved for unopposed consolidation of the related Ticketmaster/Live Nation actions.[21] The parties in the Ticketmaster/Live Nation actions currently only dispute the structure of the leadership, which is pending before the Honorable Judge Sherilyn Peace Garnett. The only actions currently pending outside of the district are *Doe v.*

---

[16] https://hackread.com/hackers-ticketmaster-data-breach-560m-users-sale/ (last visited August 16, 2024).
[17] *Ibid*.
[18] https://www.blumenthal.senate.gov/imo/media/doc/2024-07-16_snowflake_breach_snowflake.pdf (last visited August 16, 2024).
[19] https://bizfileonline.sos.ca.gov/search/business (last visited August 16, 2024).
[20] *Ryan et. al. v. Ticketmaster, et al.*, 2:24-cv-04482-SPG-JC (ECF 1).
[21] *Ibid*, (ECF. 32, 36, 37, 45).

00217218

*Ticketmaster LLC, Live Nation Worldwide, Inc.* (5:24-cv-00980, N.D. Al.) and *Dickey-Johnson v. Live Nation Entertainment, Inc. and Ticketmaster, LLC* (E.D. Pa.) (2:2024cv02623, E.D. Pa.).[22]

### 2. Advance Auto Parts Data Breach

Advance Auto Parts is a retailer of automotive aftermarket parts that, as of April 20, 2024, operates 4,777 stores primarily in the United States.[23] On or about July 11, 2024, Advance Auto Parts began notifying over 2.3 million current, former and prospective employees of a data breach.[24] According to Advance Auto Parts an unauthorized third party accessed or copied certain employment information from April 14, 2024, to May 24, 2024 that was maintained by Advance Auto Parts and stored within Snowflake, its cloud storage and data warehousing vendor (the "Advance Auto Parts Data Breach").[25] Data subject to unauthorized access included current, former and prospective employee names, Social Security numbers, and driver's license or other government issued identification numbers.[26] Additionally, a threat actor with the moniker "Sp1d3r" posted to a cybercrime forum in June, claiming to have 3TB of Advance Auto Parts data to sell, including 380 million customer profiles.[27]

At last count twelve cases against Advance Auto Parts have been filed in the Eastern District of North Carolina (including *Carr*,[28] previously transferred from the Northern District of

---

[22] *Dickey-Johnson* (E.D. Pa.) is being currently transferred to the Central District of California. *See Dickey-Johnson v. Ticketmaster et al,* 2:2024-cv-02623, ECF 10 (granting unopposed motion to transfer).
[23] https://ir.advanceautoparts.com/investors/overview/ (last visited August 16, 2024).
[24] https://www.bleepingcomputer.com/news/security/advance-auto-parts-data-breach-impacts-23-million-people/; https://www.securityweek.com/millions-impacted-by-breach-at-advance-auto-parts-linked-to-snowflake-incident/ (last visited August 16, 2024).
[25] https://www.documentcloud.org/documents/24799288-advance_auto_parts (last visited August 16, 2024).
[26] *Ibid*.
[27] https://www.infosecurity-magazine.com/news/advance-auto-parts-snowflake/ (last visited August 16, 2024).
[28] *Carr v. Advance Auto Parts, Inc.* (1:2024cv05475, N.D. Ill.).

Illinois and *Arkett*,[29] transferred from Western District of Pennsylvania). <u>None of them name Snowflake as a defendant</u>. The pending cases against Advance Auto Parts have been consolidated into a single action the *In re Advance Stores Company, Incorporated, Data Breach Litigation*, 5:24-CV-00352, in the Eastern District of North Carolina. Only two actions appear to be proceeding outside of the North Carolina District, both of which also include Snowflake as a co-defendant: *Bobbitt v. Snowflake, Inc.* and *Advance Stores Company, Inc.,* (2:2024cv00071, D. Montana) and *Townsend v. Snowflake, Inc. and Advance Stores Company, Inc.* (2:2024cv00077, D. Montana).

### 3. AT&T Data Breach

On July 12, 2024, AT&T announced that data of "nearly all" its 110 million cellular customers was illegally downloaded between April 14 and April 25, 2024, from its workspace hosted on Snowflake's cloud platform in a massive security breach (the "AT&T Data Breach").[30] This data breach affects AT&T entities' former and current customers, and also non-customers (for instance, Cricket Wireless and other non-AT&T subscribers).[31]

AT&T claims stolen data did not contain "the content of calls or texts" but did include calling and texting records that an AT&T phone number interacted with between May 1, 2022 and October 31, 2022 — such as who contacted who by phone or text, as well as the total count of a customer's calls and texts and call durations – aka metadata.[32] Stolen data also included one or more cell site ID numbers associated with phone calls and text messages from January 2, 2023.[33]

---

[29] *Arkett v. Advance Auto Parts, Inc*. (2:2024cv01122, W.D. Pa.).
[30] https://www.att.com/support/article/my-account/000102979?source=EPcc000000000000U (lasted visited August 16,2024).
[31] *See Hale v. AT&T Inc.* (3:24-cv-1943, N.D. Tex.).
[32] *Ibid*.
[33] *Ibid*.

Data from customers of AT&T's mobile virtual network operators ("MVNO") such as Boost Mobile, Cricket Wireless, H2O, and Straight Talk Wireless were also stolen.[34]

AT&T, Inc.'s principal place of business is in Dallas, Texas.[35] AT&T Mobility LLC is a wholly owned subsidiary of AT&T, Inc. with its principal place of business in Atlanta Georgia.[36] Almost twenty related actions (excluding *Olivieri*) have been filed in courts across the United States from the Northern District of Texas (six actions), Northern District of Georgia (one action), District of Montana (five actions), District of New Jersey (one action), Western District of Tacoma (one action), Southern District of Florida (one action), Southern District of California (three actions), and Northern District of California (one action, brought on behalf of non-AT&T subscribers). The *Olivieri* action was amended to proceed as to Snowflake only, removing AT&T entities from the complaint.

### 4. Separate MDL Proceeding No. 3126 – Snowflake

At least twelve Snowflake-only actions have been filed, including the amended *Olivieri* action. Eleven of these actions were filed in Montana, where Snowflake maintains an office address for the purposes of its SEC filings.[37] Two actions have been filed in the Northern District of California, where much of Snowflake's workforce and several key employees responsible for Snowflake's cyber security and data privacy policies are located. Snowflake's role as the host of

---

[34] https://www.whistleout.com/CellPhones/Guides/att-mvnos (last visited August 16, 2024)
[35] *How can we help you?*, AT&T, https://investors.att.com/resources/contacts (last visited August 18, 2024).
[36] *AT&T Mobility*, PITCH BOOK, https://pitchbook.com/profiles/company/41510-71 (last visited August 18, 2024).
[37] https://www.sec.gov/ix?doc=/Archives/edgar/data/0001640147/000164014721000103/snow-20210526.htm (noting in footnote 1 that Snowflake is a Delaware corporation with a globally distributed workforce and no corporate headquarters; its designation of the Montana office is made solely for the purposes of the SEC report, where only two of its executives are based).

7

the cloud servers can be succinctly paired down to its failure to provide an MFA enforcement mechanism for database administrators because each individual corporate defendant (e.g., AT&T, Ticketmaster, etc.) was aware of MFA vulnerability.[38] Notably, Plaintiff Chaidez (a plaintiff in the consolidated Advance Auto Parts action) petitioned to consolidate all these related actions, against all separate corporate entities, and Snowflake in the District of Montana. *See MDL No. 3126 (In Re: Snowflake, Inc., Data Security Breach Litigation).* The underlying Plaintiffs here anticipate opposing such consolidation because (a) the separate data breach actions involve separate and distinguishable facts and law; (b) the parties in separate actions are informally coordinating and consolidating their actions; (c) litigating a Snowflake-only action as a single standalone action is more efficient; (d) such consolidation would result in placing a substantial burden on the parties and witnesses in unrelated actions.

### 5. Single Action Against Neiman Marcus

Neiman Marcus Group is one of the largest multi-brand luxury retailers in the U.S.[39] They deliver and scale a personalized luxury experience across integrated retail: in-store, online, and remote selling.[40] Within their flagship brands of Neiman Marcus and Bergdorf Goodman, they operate thirty-six retail stores across the country.[41]

At the end of June 2024, Neiman Marcus began announcing that an unauthorized third party gained access to a Snowflake database platform used by Neiman Marcus Group.[42] Based on their internal investigation, this unauthorized third party obtained personal information stored in

---

[38]   https://community.snowflake.com/s/article/MFA-FAQs (last visited August 16, 2024).
[39]   https://www.neimanmarcusgroup.com (last visited August 17, 2024).
[40]   *Ibid.*
[41]   https://stores.neimanmarcus.com/stores/locations (last visited August 17, 2024).
[42]   https://www.bleepingcomputer.com/news/security/neiman-marcus-confirms-data-breach-after-snowflake-account-hack/ (last visited August 18, 2024).

00217218

their customer database.⁴³ The types of personal information in the database included information such as names, contact information (email and postal addresses, and phone numbers), dates of birth, Neiman Marcus and Bergdorf Goodman gift card information (without PINs), transaction data, partial credit card numbers, the last four digits of Social Security numbers, and employee identification numbers.⁴⁴ Shortly after learning of the breach, Neiman Marcus launched an investigation and, on June 24, 2024, following their investigation, sent notice to relevant customers affected by the breach.⁴⁵

Only one action has been filed against Neiman Marcus in relation to the data breach, *Reichbart v. Neiman Marcus Group, LLC and Snowflake, Inc. (*2024cv61389, S.D. Fla.). Neiman Marcus is headquartered in Dallas, Texas, and incorporated in the state of Delaware.⁴⁶

### 6. Single Action Against LendingTree

Operating a lending business and real estate business, LendingTree, Inc. is an online financial service which "originates, processes, approves and funds various types of residential real estate loans and offers residential mortgage loan settlement services."⁴⁷ Additionally, LendingTree offers home equity loans and lines of credit, personal loans, business loans, and auto loans.⁴⁸

LendingTree confirmed on June 10, 2024, a security incident involving QuoteWizard, one of LendingTree's suite of businesses, which hosts an insurance information platform on

---

43    *Ibid.*
44    https://www.neimanmarcusgroup.com/nmg-data-security (last visited August 18, 2024).
45    *Ibid.*
46    https://www.sec.gov/Archives/edgar/data/1061890/000119312510092668/ds3asr.htm (last visited August 16, 2024).
47    https://www.bloomberg.com/profile/company/TREE:US?embedded-checkout=true (last visited August 18, 2024).
48    *Ibid.*

9

Snowflake.[49] On July 31, 2024, LendingTree sent out notices to QuoteWizard customers whose data may have been stolen, which includes customer names, residential addresses, and driver's license numbers.[50]

To date only one case has been filed against LendingTree, *Nader v. Snowflake, Inc. and LendingTree LLC* (2:2024cv00079, D. Mont). LendingTree is an LLC registered in Delaware, and headquartered with its principal place of business in Charlotte, NC 28203.[51]

## II. LEGAL STANDARD

A Section 1407 transfer for consolidated proceedings is only appropriate if (1) the actions share common issues of fact, (2) transfer would be in further convenience of parties and witnesses, and (3) transfer would advance the just and efficient conduct of the actions. 28 U.S.C. § 1407(a). The party seeking transfer bears "a strong burden to show that the common questions of fact are so complex and the accompanying common discovery so time-consuming as to overcome the inconvenience to the party whose action is being transferred and its witnesses." *In re Multidistrict Civil Antitrust Actions Involving The Distribution of Scotch Whiskey*, 299 F. Supp. 543, 544 (J.P.M.L. 1969). Movant Young cannot satisfy this burden as to the Olivieri Plaintiffs.

## III. ARGUMENT

Movant Young seeks to transfer four cases and any tag-alongs to the Northern District of Georgia for coordinated and consolidated pre-trial proceedings, including (1) *Young v. AT&T Mobility, LLC*, No. 1:24-cv-03185 (N.D. Ga.), (2) *Schulte v. AT&T Inc. and AT&T Mobility, LLC*,

---

[49] https://nationalmortgageprofessional.com/news/hackers-auction-lendingtree-consumers-data (last visited August 18, 2024).
[50] https://www.iowaattorneygeneral.gov/media/cms/7312024_QuoteWizard_6FE9E5A5CEA7A.pdf (last visited August 18, 2024).
[51] https://www.sosnc.gov/online_services/search/Business_Registration_Results (last visited August 18, 2024).

00217218

No. 3:24-cv-07818 (D.N.J.), (3) *Winger v. AT&T Inc.*, No. 3:24-cv-1797 (N.D. Tex.), and (4) *Oliveri, et al. v. Snowflake, Inc.*, No. 2:24-cv-00056 (D. Montana). *See* Young Motion at 2. (As discussed above, an additional fifteen actions have been filed since Movant's petition.)

According to Young, these four cases (1) seek to certify the same nationwide class of AT&T customers whose customer data was subject to the AT&T Data Breach, (2) uniformly challenge AT&T's failure to properly secure and safeguard the personally identifiable information ("PII") and/or customer proprietary network information ("CPNI") of AT&T customers, and (3) involve common factual and legal issues. *See* Young Motion at 1-3.

The *Olivieri* action must be excluded from the Young Motion. Since it was filed, Olivieri Plaintiffs filed an amended complaint (on August 9, 2024) that dismissed all their claims against defendants AT&T, Inc. and AT&T Mobility, LLC leaving Snowflake as the single defendant. This was done to self-centralize Snowflake-only actions, following the trend of self-centralization efforts taken in Ticketmaster and Advanced Auto Parts. *See In re Accellion, Inc. Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 1372, 1374 (J.P.M.L. 2021) ("emphasized that centralization under Section 1407 should be the last solution after considered review of all other options."); *see also In re Alteryx, Inc., Customer Data Sec. Breach Litig.*, 291 F. Supp. 3d 1377, 1378 (J.P.M.L. 2018) (same); *In re Best Buy Co.*, 804 F. Supp. 2d 1376 (J.P.M.L. 2011) (same). As such, transfer and consolidation of *Oliveri* as requested by Movant is not proper as it does not satisfy the Section 1407 factors.

> A. ***Olivieri* Snowflake Action Should Be Litigated as a Standalone Action Due to Minimal Overlap of Factual and Legal Questions**

*Oliveri* has minimal overlap of fact with the cases Young seeks to transfer and consolidate. Snowflake's role as the host of the cloud servers can be succinctly paired down to its failure to provide an MFA enforcement mechanism for database administrators. Using Snowflake as a cloud

storage vendor, each individual defendant, including AT&T was aware of this MFA vulnerability.[52]

Snowflake's role in hosting the cloud servers can be litigated in swift fashion, unencumbered by a myriad of AT&T specific issues, including (1) relationship between AT&T and its former/current customers or non-customers; (2) AT&T entities' representations to the affected victims of the data breach regarding security and safety of its systems; (3) AT&T's prior data breach and failures to secure customer data; (4) AT&T data specific practices, duties, and liability; (5) adequacy and timeline of AT&T's notice given to the victims and the public; and (6) applicability of any arbitration clauses or other agreements between AT&T and victims of the data breach. Thus, Snowflake and AT&T's liability is distinct and will involve unique claims, issues of liability, and evidence. *See In re Accellion, Inc. Customer Data Sec. Breach Litig.*, 543 F. Supp. at 1374 (denying centralization in a similar scenario, despite some overlap of factual and legal issues in actions).

In a similar data breach, the JPML denied centralization explaining:

> [A]ny factual overlap among the actions as to Accellion's FTA product, its vulnerability to attack, and its alleged support of this 'legacy' product may be eclipsed by factual issues specific to each client defendant . . . each client defendant's knowledge of the FTA's alleged vulnerability to attack will be unique, as will Accellion's alleged efforts to urge each client to migrate to its newer file sharing product. Other unique factual issues include when each client was made aware of a data breach and when it notified its customers and/or employees.

*Id.* 1374. Here, like in *Accellion,* the minimal potential overlap in Snowflake-only and AT&T actions is likely to be "eclipsed by factual issues" related to AT&T entities, their knowledge of the MFA's vulnerabilities, their efforts to mitigate the MFA issues, timeline and adequacy of the

---

[52] https://community.snowflake.com/s/article/MFA-FAQs (last visited August 16, 2024).

notices given to the former/current customers, and the adequacy of AT&T's policies and procedures concerning its data storing practices in light of the several data breaches it experienced in the last several years.

The parties in Snowflake-only actions can informally coordinate and centralize separately from AT&T entities to avoid burdening multiple witnesses and parties. Therefore, including *Olivieri* in any transfer and consolidation of the above actions would introduce unnecessary complexity of a straight-forward action against Snowflake, only serving to delay resolution of the Snowflake action and relief to millions impacted by its negligence.

### B. Undue Delay and Burden on the Parties if *Olivieri* Action Is Included in the AT&T MDL

Transfer of *Olivieri* would inconvenience the parties and witnesses and would hinder the efficient conduct of the actions. *Cf.* 28 U.S.C. § 1407(a). Snowflake's primary workforce including key employees responsible for cyber security and data practices are located in San Mateo, California.[53] AT&T, Inc., on the other hand, has its principal office in Dallas and AT&T Mobility in Atlanta.[54] Thus, not only is the bulk of the evidence needed to establish liability for the AT&T Data Breach and the Snowflake Data Breach – two discrete events – different, so is the identity and location of the parties, evidence and witnesses. As such, transfer and consolidation of *Olivieri* to the Northern District of Georgia would not advance the just and efficient conduct of the actions.

---

[53] https://www.smdailyjournal.com/news/local/snowflake-moves-its-hq-out-of-san-mateo/article_becaabc6-c02e-11eb-ba32-db54937cfeaf.html; https://www.sfgate.com/tech/article/snowflake-new-office-real-estate-18299429.php (last visited August 16, 2024).

[54] *AT&T Mobility*, PITCH BOOK, https://pitchbook.com/profiles/company/41510-71 (last visited August 18, 2024); *How can we help you?*, AT&T, https://investors.att.com/resources/contacts (last visited August 18, 2024).

13
00217218

For these reasons, *Olivieri* should be excluded from the Young Motion and transfer and consolidation of that action should be denied. The actions do not share common issues of fact and the transfer and consolidation of *Olivieri* does not satisfy 28 U.S.C. § 1407(a).

### C.  Snowflake-Only Actions Should Proceed Separately

Olivieri Plaintiffs take no position on whether there should be an AT&T MDL or whether it should proceed in Georgia (where AT&T Mobility is headquartered) or Texas (where AT&T Inc. is headquartered, and another data breach MDL against AT&T is pending). However, Snowflake-only actions, including *Olivieri* should proceed outside of an MDL in the District of Montana, where the majority of Snowflake only cases are filed.

## IV.  CONCLUSION

For the reasons set forth herein, Olivieri Plaintiffs respectfully request that the Panel deny Young's motion to transfer and consolidate *Olivieri, et al. v. Snowflake, Inc*., No. 2:24-cv-00056 (D. Montana) with the other AT&T actions.

Respectfully submitted,

Dated: August 19, 2024

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD
JENNIFER L. MACPHERSON

By:  *s/ Timothy G. Blood*
TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
jmacpherson@bholaw.com

Counsel for Plaintiffs *Richard Olivieri and Lauren Woon*

*Olivieri, et al. v. Snowflake, Inc.*
No. 2:24-cv-00056 (Dist. Montana)